581 A.2d 1002

**SPAHR–ALDER GROUP and Lehigh Avenue Block Association, et al., Appellants,**

v.

**The ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH, etc., Appellees.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1990.

Decided Oct. 24, 1990.

Jonathan B. Robison, Robison & Golden, Pittsburgh, for appellants.

No appearance, for appellee, City of Pittsburgh.

William P. Bresnahan, with him, Thomas R. Solomich and Dwight D. Ferguson, Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, for appellee, Spahr Street Development Co.

Before PALLADINO and McGINLEY (P.), JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Before us is an appeal by the Spahr–Alder Group and Lehigh Avenue Block Association, et al.[1], the appellants, from an order of the Court of Common Pleas of Allegheny County which affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh (ZBA). The ZBA granted to the Spahr Street Development Company (developer), the intervenor herein, a special exception to allow for construction of a mini-mall in an area of the city zoned R–4,

---

1. At no place in the pleadings or record is there any indication of who is included in the group "et al." for the appellants.

Multiple Family Residence, on properties which are both conforming and nonconforming to the designated use.

Specifically, the developer has been granted a special exception for the limited enlargement of a nonconforming structure. The developer plans to change the occupancy of several properties located at 231 through 243 Spahr Street in the area of Pittsburgh known as Shadyside. Presently on the properties are an auto repair garage, a small retail establishment (both legal nonconforming uses) and a residence (a legal conforming use). The plan of the developer is to convert all three of the above properties into one building with a restaurant, a cafe and several retail facilities. A second residence would be razed and, together with its lot and an adjoining vacant lot, a parking facility would be established.

The first of the two central issues presented for our consideration revolves around the meaning of the phrase "improvements to the structure" as used in Section 909.-06(b)(17)G of the Pittsburgh Zoning Ordinance (Ordinance).

The appellants contend that the developer's proposed changes are in violation of the Ordinance and as such the submitted application for a special exception should have been denied. Specifically, the appellants maintain before this Court that Section 909.06(b)(17)G is violated by the developers. This section of the Ordinance provides:

> The total costs of all improvements to the structure under this provision shall not exceed fifty (50%) percent of the assessed valuation of the structure proposed to be improved prior to the first such improvement under this provision, as determined by the Superintendent.

The developers plan to spend in excess of $680,000.00 on this project. The assessed value of the structures to be improved is $93,400.00. The developer maintains that its projected spending for "all improvements to the structure" is $44,000.00 or forty-seven percent of the assessed value. The appellants contend that the amount of monies to be spent on "improvements to the structure" by the developer is clearly in excess of the fifty percent limit. The term

"improvements to the structure" is not defined in the Ordinance. The resolution of the dispute before us turns on the meaning of the phrase "improvements to the structure" as used in the Ordinance. The ZBA and the lower court, through its affirmation of the ZBA's decision, found the phrases "improvements to the structure" and "structural alterations" to be identical. "Structural alterations" is defined in the Ordinance at Section 903.02(s) as "any change which would tend to prolong the life of the supporting members of a structure, such as bearing walls, columns, beams or girders." The term "structure" is defined in the Ordinance at Section 903.02(s) as "anything constructed or erected, the use of which requires, directly or indirectly, a permanent location of the land."

Our task as a reviewing court, where the trial court took no additional evidence, is to determine whether the ZBA clearly abused its discretion or committed an error of law. *Polizzi v. Zoning Board of Adjustment*, 420 Pa. 405, 218 A.2d 226 (1966).

■ The first issue for our consideration is whether the ZBA, as a matter of law, correctly equated the terms "improvements to the structure" and "structural alterations" as used in Sections 909.06(b)(17)G and 903.02(s) of the Ordinance respectively. For the following reasons we conclude that it did not.

The developer here proposes to change the use of conforming residences to an enlargement of the adjacent, legally nonconforming use. Under Section 937.05(b)(9) of the Ordinance, rehabilitation and/or limited enlargement of a nonconforming structure and an extension of the nonconforming use therein is specifically allowed by way of a special exception grant provided the prerequisites of Section 909.06(b)(17) are met. Sub-section (G) of 909.06(b)(17), as previously stated, requires the total cost of all improvements to the structure not to exceed fifty percent of the assessed value of the structure before any changes are made.

The developer's contention is that only items which would tend to prolong the life of the supporting members of a structure or those items which require a permanent location on the land should be included in the fifty percent limit as set forth in Section 909.06(b)(17)G of the Ordinance. We reject this argument.

Because the term "structure" is defined in the Ordinance, we can substitute the precise definition of the term "structure" in the phrase "improvements to the structure." In doing so, "improvements to the structure" is identical in meaning to "improvements to the [thing] constructed or erected, the use of which requires, directly or indirectly, a permanent location on the land." The developer submits that the *improvements* must be constructed or erected and the use of them must require a permanent location on the land. Purely as a grammatical matter, this interpretation grasps the incorrect antecedent for the word "which" as used in Section 903.02(s); "which" refers back to the "thing" constructed (the structure) not the improvements. A structure consists of more than its supporting members.

■ Because "improvement" is not defined in the Ordinance, we must give it its common and approved usage. 1 Pa.C.S. § 1903(a). Webster's Third New International Dictionary 1138 (1966) defines improvement as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Given this definition, many of the items omitted by the developer in its list of improvements are, in fact, improvements to the structure. For example, installing air conditioning, plumbing, an elevator and storefronts does, in fact, constitute a betterment of the real property and is designed to make the property more valuable.

■ The fifty percent limit in Section 909.06(b)(17)G of the Ordinance is a reasonable limitation on the expansion of

nonconforming structures. As opined in *Hanna v. Board of Adjustment,* 408 Pa. 306, 312, 183 A.2d 539, 543 (1962):

> A basic purpose of zoning is to ensure an orderly physical development of the city ... by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent ... Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be reduced to conformity as speedily as is compatible with the law and the Constitution.

Thus, the limitations set forth in the Ordinance with respect to nonconforming structures must be strictly construed, keeping in mind the notion that conformity is the ultimate objective of a zoning ordinance. To equate the specifically defined phrase "structural alterations" with the undefined phrase "improvements to the structure" is an error of law. Such construction ignores a basic thrust behind the Ordinance and would allow, as in this case, a project involving several hundred thousand dollars on property assessed at $93,400.00.

Accordingly, based upon the foregoing discussion, we conclude that the ZBA erred as a matter of law in its determination. The order of the court of common pleas is reversed.[2]

## ORDER

NOW, October 24, 1990, the order of the Court of Common Pleas of Allegheny County, in the above captioned matter, dated January 25, 1990, which affirmed the decision

---

2. We need not consider the second issue of whether the application for a commercial parking exception should have been denied as we have disposed of the case on the first issue alone.

of the Zoning Board of Adjustment of the City of Pittsburgh, is reversed.

PALLADINO, J., dissents.

PELLEGRINI, J., did not participate in the decision in this case.