803 A.2d 1270

**Jeannette F. GRONER and Wieslaw T. Niemoczynski, Appellees,**

v.

**MONROE COUNTY BOARD OF ASSESSMENT APPEALS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 14, 2001.

Decided Aug. 22, 2002.

Mark Steven Love, Tannersville, Monroe County Board of Assessment Appeals.

Wieslaw T. Niemoczynski, Stroudsburg, for Jeannette, et al. Groner.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice EAKIN.

The Monroe County Board of Assessment Appeals contests the Commonwealth Court order affirming the trial court's reversal of the increased assessment of appellees' premises. We granted allowance of appeal to determine whether the Tax Assessor's actions constituted an illegal spot reassessment.

Groner owns a commercial property in Stroudsburg, Monroe County. Niemoczynski's lease with Groner obligates him to pay real estate taxes on the property. In February 1998, appellees converted the premises from a women's apparel shop to a brokerage office; renovations of the first floor included removal of dressing rooms, storage rooms, counters, carpeting, lighting, shelving and hanging fixtures, plus rewiring and installation of partition walls to create three offices. The renovations cost about $58,000. Before the renovation, the property's fair market value was $136,200; its base assessment was $18,000. Alerted by appellees' building permit, the Monroe County Tax Assessor raised the assessment value to $176,148, and notified appellees that the assessment had increased by 55%. Appellees appealed to the Board, which affirmed the assessor's determination. Appellees appealed to the trial court, which heard the matter *de novo,* granted the appeal, and reduced the property's fair market value and assessment to the prior amounts. The Commonwealth Court affirmed the decision of the learned trial court.

The Board asserts it had express statutory authorization to reassess appellees' property based on the cost of the renovations. Appellees counter the renovations were only cosmetic, converting the property from one use to another, but not increasing its value. They further assert the Tax Assessor viewed the grant of a building permit as an open door to investigate the renovations and engage in an illegal spot reassessment based on the value of the business within the property. A spot reassessment is "[t]he reassessment of a property or properties that is not conducted as part of a countywide revised reassessment and which creates, sustains or increases disproportionality among properties' assessed values." 72 P.S. § 5342.1.[1]

When reviewing tax assessment matters, we must determine whether the trial court abused its discretion, com-

---

1. The definitions in § 5342.1 (relating to assessments in counties of the Second Class A and Third Class) apply to Monroe County, a county of

mitted an error of law, or reached a conclusion not supported by substantial evidence. *Westinghouse Electric Corp. v. Bd. of Assessment*, 539 Pa. 453, 652 A.2d 1306, 1309 (1995). When tax assessment appeals are heard before trial courts,

> [t]he procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness.
>
> [T]he taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.
>
> Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court.

*Deitch Co. v. Bd. of Property Assessment*, 417 Pa. 213, 209 A.2d 397, 402 (1965) (citations omitted).[2]

The Board relied on § 602a of the Fourth to Eighth Class County Assessment Law in establishing its *prima facie* case, which provides:

the Fifth Class, under 72 P.S. § 5020–104 (providing for the application of the General County Assessment Law in all counties).

2. The dissent suggests "the taxpayers here simply failed to create an adequate record to rebut the taxing authority's *prima facie* case for reassessment." Op., at —— (Saylor, J., dissenting). If the taxing

The board may change the assessed valuation on real property when (i) a parcel of land is divided and conveyed away in smaller parcels, or (ii) when the economy of the county or any portion thereof has depreciated or appreciated to such extent that real estate values generally in that area are affected, and (iii) when improvements are made to real property or existing improvements are removed from real property or are destroyed.

The painting of a building or the normal regular repairs to a building aggregating one thousand dollars ($1,000) or less in value annually shall not be deemed cause for a change in valuation.

72 P.S. § 5453.602a.[3]

 The basis for the Board's *prima facie* case is the cost of the renovations. The Tax Assessor admits the building permit tipped him off to the possible need for a reassessment. He conceded at trial that none of the renovations changed the outer shell of the building, increased the heated square footage, or enhanced or changed any mechanical system. Nonetheless, because the cost of the renovations exceeded $1,000, appellant argues the property now falls within § 602a, such that failure to reassess would result in inequity because taxation within the county would no longer be uniform.

 While § 602a specifically provides three circumstances when a property may be reassessed, this case focuses on

authority had been authorized to change the original assessment, then the dissent would be correct; once the taxing body established the new figure, the burden shifted to the taxpayer, and in the absence of evidence that the new figure is wrong, the taxpayer loses. However, this assumes the taxing body was authorized to reassess in the first place. The Board cannot put an *unauthorized* reassessment figure into evidence and win simply because the taxpayer challenges the *authority* to reassess, rather than rebutting the new figure itself. Because these renovations do not constitute an improvement, the reassessment was not permissible; therefore, the taxpayers did not have to rebut the taxing authority's new figure.

3. This amount was increased to $2,500 by Act of October 11, 2000, P.L. 533, *amending,* 72 P.S. § 5453.602a.

whether the renovations to the building constitute "improvements."[4] If these renovations did not constitute "improvements," this was an impermissible reassessment.

Not every bit of work done to change a building constitutes an improvement. "Improvement" has been defined as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Spahr–Alder Group v. Zoning Board of Adjustment of Pittsburgh,* 135 Pa.Cmwlth. 561, 581 A.2d 1002, 1004 (1990). Here, the renovations exceeded $1,000 set forth in § 602a, but that figure is a floor, not a ceiling. That is, costs under $1,000 annually "shall not" be the cause of revaluing the property. However, the statute does not say that expenses over $1,000 are improvements *per se.* Indeed, $1,000 in today's world might be consumed by common repairs such as replacing a water heater, air conditioner, or carpet, none of which enhance the capital value of a building.

We conclude the renovations completed by appellees do not constitute an improvement to the property; therefore, the Board did not have the authority to reassess the property under § 602a. We affirm the Commonwealth Court's order upholding the return of the property's fair market value and assessment to prior amounts.

Order affirmed.

Justice SAYLOR files a dissenting opinion in which Justice NIGRO joins.

Justice SAYLOR, dissenting.

I am in substantial agreement with Judge Leadbetter's position expressed in dissent in the Commonwealth Court. As the opinion is unpublished, it is set forth here as an appendix.

4. A reassessment is also permissible when a county-wide reassessment is undertaken or to correct a mathematical or clerical error. *See Althouse v. County of Monroe,* 159 Pa.Cmwlth. 467, 633 A.2d 1267 (1993).

Centrally, I believe that the question of whether the renovations at issue are subject to reassessment is at least a mixed question of law and fact, dependent, for example, upon case-specific factors such as the fungibility of the alterations involved. Resolution of the issue should therefore derive, in large part, from the record presented. As Judge Leadbetter aptly notes, however, the taxpayers here simply failed to create an adequate record to rebut the taxing authority's *prima facie* case for reassessment.* Accordingly, the conclusions of the common pleas court, the Commonwealth Court, and ultimately a majority of this Court suggest a *per se* rule barring any reassessment premised upon interior alterations made to accommodate a new use.

Since I disagree with such a rule, and for the reasons furnished by Judge Leadbetter, I also respectfully dissent.

Justice NIGRO joins this dissenting opinion.

### *Appendix*

## December 8, 2000

## Dissenting Opinion by Judge LEADBETTER.

* In the text of its opinion, the majority correctly describes the appropriate allocation of burdens in a tax assessment appeal. *See* Majority Opinion, at 1272. Nevertheless, in a footnote responsive to this dissent, the majority announces that the Board's determination that certain renovations constitute improvements is not entitled to the same initial presumption of validity as other components of its decision-making. *See id.* at 1272 n. 2. With respect, I find such approach to be inconsistent with the provisions of the Fourth to Eighth Class County Assessment Law channeling assessment and reassessment appeals through the same procedures, *see, e.g.,* 72 P.S. §§ 5453.701(b), 5453.702; contrary to widely-accepted practice, *see generally* 72 AM. JUR. 2d State and Local Taxation § 692 (2002) ("There is a presumption of validity of assessments by taxing authorities, absent a demonstration that those findings are clearly unreasonable or unlawful, and thus, such assessments will not be set aside in the absence of evidence showing them to be incorrect."); and inimical to the policies underlying the assessment laws. *See generally Cedarbrook Realty, Inc. v. Nahill,* 484 Pa. 441, 452, 399 A.2d 374, 379 (1979) (referencing the "traditionally accepted importance of the tax collection process to the perpetuation and the continuing vitality of the government").

I must respectfully dissent. As the majority notes, Section 602.1 of the Fourth to Eighth Class County Assessment Law [1] specifically allows a new assessment to be made "when improvements are made to real property or existing improvements are removed from real property." The legislature further provided that "painting of a building or the *normal regular* repairs to a building aggregating one thousand dollars ($1,000) or less in value annually shall not be deemed cause for a change in valuation" (emphasis added). *Id.* Here, the renovations undertaken by taxpayers, which fall within the general understanding of the term "improvements," far exceeded $1,000.00,[2] and were not by any definition normal regular repairs. Nonetheless, the majority finds the statute inapplicable because it characterizes the work done as "cosmetic alterations" that would not "increase the property's market value for tax assessment purposes." In so holding, I believe that the majority has substituted its judgment for that of the legislature as to the types of improvements which will justify a reassessment, an action beyond our authority.[3]

I further believe that the majority has substituted its own notions of the effect of renovations upon real estate values for that which the law requires-evidence presented to the trial court. In *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965), our Supreme Court noted that the procedures in a tax assessment appeal have long been established:

> [T]he taxing authority first present[s] its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to

1. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.602a, added by Section 2 of the Act of January 18, 1952, P.L. (1951) 2138.

2. The building permit obtained for the renovations estimated their cost at $58,000.00.

3. The taxpayers did not challenge the constitutional validity of the statute as written.

respond with credible, relevant evidence, then the taxing body prevails.

*Id.* at 221, 209 A.2d at 402. Here, the taxpayer presented no evidence that the assessed value was not accurate, let alone any evidence of a contrary valuation.[3] Thus, the assessment value must be accepted.

Finally, the trial court's rejection of the assessment as a "value-in-use" is erroneous for two reasons. First, as noted above, the *basis* for the assessment does not come into issue unless and until the taxpayer presents evidence to dispute the *value* contained in the assessment, which this taxpayer did not do. Second, the assessment here was not based upon a value-in-use analysis. As noted by the majority, "value-in-use refers to a value *unique to the particular owner,* such as the value of a business *operated on* the property rather than the value of the property itself, which would remain constant if the property were sold and the business moved elsewhere." *Air Products & Chemicals, Inc. v. Board of Assessment Appeals of Lehigh County,* 720 A.2d 790, 793 (Pa.Cmwlth.1998) [emphasis added beyond that in original]. The assessment in the present case was not based upon any value unique to the particular owner. Rather, the assessor's approach here was based upon the principle that if an office suite is the most profitable use of a commercial building, a hypothetical willing buyer will pay more for that building after it has been fitted out for offices than he would if the work (and related capital expenditures) were to be undertaken after his purchase. As this court's opinion in *Air Products* goes on to say, in discussing the interrelationship between the concepts of highest and best use and value-in-use:

> Properly understood, the *Schaeffer Brewery* holding which prohibits value-in-use assessments for tax purposes does not, as the County suggests, abrogate the principle discussed below that fair market value is to be determined based upon the current condition of the property....

**3.** The taxpayers simply argued that their improvements should not have "opened the door" to a new assessment based upon the new configuration for office use.

[H]ypothetical ways in which the property could be used by potential buyers should be considered in determining what a willing buyer would pay for the property. That is not to say, however, that the property should be valued as though it were already in that hypothetical condition.

*Id.* at 793–94. Conversely, the higher value will attach after the work has been done.

For these reasons, I would reverse the order of the trial court.