**In Re: Appeal of Robert E. DELPHAIS and John F. Dulin, Jr. from the decision of the Board of Assessment Appeals for Chester County, PA in connection with the property at 319 Westtown Road, West Goshen Township, Chester County, Pennsylvania.**

**Tax Parcel No. 52–05–0103.0000 (52–5–103).**

**Appeal of: Robert E. Delphais and John F. Dulin, Jr.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 8, 2006.

Decided July 14, 2006.

Gerald F. McCormick, West Chester, for appellants.

Jeffrey R. Sommer, West Chester, for appellee, Chester County Board of Assessment Appeals.

Ross A. Unruh, West Chester, for appellee, West Chester Area School District.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Robert E. Delphais and John F. Dulin, Jr. (Taxpayers) appeal from an order of the Court of Common Pleas of Chester County (trial court) denying their appeal from a decision of the Chester County Board of Assessment Appeals (Board). In this case we consider whether the Board had the authority to reassess Taxpayers' recently renovated commercial property.

Taxpayers are the owners of a 68,000 square foot, single-story building located on 5.3 acres of land in Chester County. Beginning in 1978, Taxpayers leased the front portion of the building, consisting of 20,000 square feet, to the operators of a racquetball and fitness club. The remainder of the building was leased for general warehouse space. At the time of the most recent countywide reassessment in 1998, the improvements to the front portion of the building included a manager's office; nine racquetball courts; men's and women's locker rooms, saunas, shower rooms and bathroom facilities; a free weight room; a nautilus room and a swimming pool. The mezzanine level of the fitness club contained a martial arts studio and four additional offices.

In 2002, the proprietors of the fitness club ceased operation and terminated their lease. Taxpayers were unable to procure a similar tenant and decided to restore the front portion of the building to unfinished warehouse space. They removed all of the interior improvements, replaced the split block façade on the front of the building and added brick facades to parts of the side walls of the building. No changes were made to the remaining 48,000 square feet of space in the middle and rear portions of Taxpayers' building.

Prior to the demolition and removal of the racquetball club improvements, Taxpayers' property had been assessed at $2,800,000. Following the renovations, the County's Assessment Office notified Taxpayers that the assessment value for 2004 was being raised by $1,193,460, resulting in a total assessment of $3,993,460 for 2005. Taxpayers appealed to the Board and, following a hearing, the Board issued a written decision upholding the 2004 interim assessment and the total assessment for 2005.

Taxpayers filed a notice of appeal to the trial court stating that "[t]he reason for this tax assessment appeal is that the interim assessment is excessive." Reproduced Record at 56a (R.R. ____). At a hearing before the court on September 16, 2005, Taxpayers stipulated that the amount of the assessment was not at issue. Instead, they challenged the authority of the Board to reassess their property. Counsel for the taxing authorities countered that Taxpayers were prohibited from raising that issue since it had not been preserved in their notice of appeal. The trial court deferred ruling on the waiver issue and allowed Taxpayers to present evidence in support of their appeal.

Appellant John Dulin testified regarding the renovations to the building. These included removal of all interior masonry walls, plumbing fixtures and most of the mechanical systems associated with the racquetball club. Taxpayers also replaced the exterior masonry facade with a brick facade and added showroom type windows to the front western elevation and north and south elevations. Dulin acknowledged that Taxpayers made the renovations in order to lease the space to three new warehouse tenants. At the conclusion of the hearing, the trial court requested memoranda of law on the waiver issue as well as the Board's authority to reassess Taxpayers' property.

On December 19, 2005, the trial court issued an order denying Taxpayers' appeal. In its order, and opinion sur appeal filed February 20, 2006, the trial court noted that Taxpayers had not raised the issue of the Board's authority to reassess the property either before the Board or in their notice of appeal from the Board's decision. Accordingly, the trial court held that this issue had been waived pursuant to Chester County Rule of Civil Procedure 5003(b) (C.C.R.C.P. No. ____). The trial court also addressed the merits of Taxpayers' appeal and held that the Board was authorized to reassess their property since the renovations to the building constituted assessable improvements. Taxpayers now appeal the trial court's order.

On appeal,[1] Taxpayers argue that the trial court erred in finding that the Board had the authority to reassess their property. Taxpayers maintain that the Board lacked such authority because the renovations they made to the building were cosmetic in nature and did not constitute assessable "improvements."[2] The trial court rejected Taxpayers' characterization of the renovations and found, based on Taxpayers' own evidence, that the im-

1. When reviewing tax assessment matters, we must determine whether the trial court abused its discretion, committed an error of law, or reached a conclusion not supported by substantial evidence. *Groner v. Monroe County Board of Assessment Appeals*, 569 Pa. 394, 397–398, 803 A.2d 1270, 1272 (2002).

2. Taxpayers also argue that the trial court erred by finding that they had waived their substantive issue. We need not directly consider the waiver issue since the trial court elected to receive evidence on Taxpayers' appeal and rendered a decision on the merits. A brief discussion of the waiver issue is set forth below.

provements they made were substantial enough to permit a reassessment. We agree.

The pertinent triggering events for a reassessment are set forth in Section 6.1 of the Second Class A and Third Class County Assessment Code:

The subordinate assessors may change the assessed valuation on real property when a parcel of land is divided and conveyed away in smaller parcels or when improvements are made to real property or existing improvements are removed from real property or are destroyed. The painting of a building or the normal regular repairs to a building aggregating two thousand five hundred dollars ($2,500) or less in value annually shall not be deemed cause for a change in valuation.

72 P.S. § 5347.1.[3] The Code does not define "improvements," however our Supreme Court has adopted the following definition for tax reassessment purposes:

Not every bit of work done to change a building constitutes an improvement. "Improvement" has been defined as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."

*Groner v. Monroe County Board of Assessment Appeals,* 569 Pa. 394, 400, 803 A.2d 1270, 1273 (2002) (quoting *Spahr–Alder Group v. Zoning Board of Adjustment of City of Pittsburgh,* 135 Pa. Cmwlth. 561, 581 A.2d 1002, 1004 (1990)).

In this case, appellant John Dulin testified that the renovations involved removing all of the interior masonry walls and plumbing and most of the mechanical systems, some of which were replaced with new equipment.[4] Taxpayers also replaced the exterior masonry facade with a brick facade and added showroom type windows to the front western elevation and north and south elevations. These changes went well beyond "cosmetic," regular repairs and involved a significant expenditure of labor and money. They were also clearly designed to enhance the capital value of the building since Dulin admitted that Taxpayers' sole motivation for completing the renovations was to lease the space to three new warehouse tenants. In sum, we agree with the trial court that the renovations to Taxpayers' building constituted assessable improvements.[5]

3. Act of June 26, 1931, P.L. 1379, Section 6.1 added by the Act of July 19, 1991, P.L. 91.

4. We note that under a straightforward application of Section 6.1 of the Second Class A and Third Class County Assessment Code, the removal of the existing improvements in and of itself constituted a triggering event for a reassessment.

5. Taxpayers also argue before this Court that the trial court erred by finding that they had waived their right to challenge the Board's authority to reassess their property. In so finding, the trial court strictly applied C.C.R.C.P. No. 5003(b)(3), which requires an aggrieved taxpayer to identify the "[r]eason(s) for the appeal." Rule 5003(b) also contemplates various grounds upon which a tax assessment appeal may be taken and identifies basic pleading requirements for each type of challenge:

For the purposes of this section, where a challenge is based on fair market value, it shall be sufficient to state that the assessment pursuant to the applicable State Tax Equalization Board, common level or predetermined ratio, is excessive. Where the challenge is based on uniformity, it shall be sufficient to state lack of uniformity as the basis for the appeal. Where a challenge is based on class certification for the purposes of a class action suit, the appellant shall state with specificity the alleged error of law or abuse of discretion committed by the Board of Assessment Appeals.

For the foregoing reasons, we affirm the order of the trial court.

### *ORDER*

AND NOW, this 14th day of July, 2006, the order of the Court of Common Pleas of Chester County in the above-captioned matter, dated December 19, 2005, is hereby AFFIRMED.

C.C.R.C.P. No. 5003(b)(3). Because Taxpayers' notice of appeal to the trial court stated only that the assessment was "excessive," the trial court concluded that Taxpayers could not pursue a different theory regarding the Board's authority to conduct the reassessment. The waiver issue was technically mooted by the trial court's taking of evidence and ruling on the merits of Taxpayers' appeal. The court not only heard live testimony on the issue, but accepted post-hearing memoranda on the Board's authority. Thus, the taxing authorities could not have been prejudiced by lack of notice of Taxpayers' substantive issue. In any event, further consideration of the waiver issue is technically not warranted given our affirmation of the trial court's analysis of the substantive issue. We note, however, that C.C.R.C.P. No. 5003(b)(3) is not a model of clarity, and really only sets forth examples of three bases for an assessment appeal: excessiveness, uniformity and class action suits. A challenge to the Board's authority to conduct a reassessment is not among the examples provided in the local rule. Since Taxpayers' legal theory did not fit neatly into any of the enumerated bases, it would have been unduly harsh for the trial court to dismiss Taxpayers' appeal solely on the basis that they had technically failed to preserve their issue.