**Robert S. CUSTER, Appellant**

v.

**The BEDFORD COUNTY BOARD OF ASSESSMENT AND REVISION OF TAXES.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2006.

Decided Nov. 2, 2006.

Ronald L. Finck, Harrisburg, for appellant.

Barry R. Scatton, Bedford, for appellee.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Robert S. Custer (Custer) appeals an order of the Court of Common Pleas of Bedford County (trial court) affirming the Bedford County Board of Assessment and Revision of Taxes' (Board) decision that his greenhouse was taxable realty pursuant to Section 201(a) of the Fourth to Eighth Class County Assessment Law (Fourth to Eighth Class Law).[1]

Custer owns approximately 97 acres in Cumberland Valley Township, Bedford County, where he operates a nursery business. In March 2001, Custer purchased a used greenhouse for $1,500, disassembled it, transported it by flatbed pickup truck to his property where he stored it until May 2004, then reassembled it. The greenhouse is an arch-shaped structure that is 30 feet by 96 feet in size, and is approximately 12 feet high at its highest point. The greenhouse is constructed by 24 vertical pipes on each side. These vertical pipes are inserted two feet into the ground and are connected at the top to arch-shaped pipes. Plastic covering is attached to the arching pipes and serves as a covering for the structure.

Because of the addition of the greenhouse to the property, the Board increased the assessed value of the buildings on Custer's property for the 2004 tax year from $11,124 to $19,978, an increase of $8,854. Custer appealed to the Board contending that the greenhouse should not be assessed because it was not real estate.[2]

---

1. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §§ 5453.201(a).

2. Section 201(a) of the Fourth to Eighth Class Law, enumerates the types of property that are subject to real estate assessment and taxation. It provides that:

> The following subjects and property shall as hereinafter provided be valued and assessed

After the Board denied his appeal, he appealed to the trial court, again contending that the greenhouse was not real estate, but if it was, it was excluded from taxation because it was used as part of an industrial establishment, i.e., the growing of plants and flowers.

At the hearing before the trial court, Custer testified that to disassemble the greenhouse and move it to his property, the plastic was removed and then the pieces that held it together were unbolted. After transporting it to his property, he reassembled it without heavy equipment, using only clam shell diggers, shovels and wrenches. He testified that each of the posts/poles was placed two feet into the ground just past the frost line. Custer opined that it was never his intention for the greenhouse to be permanent, but only to serve as a "starter" greenhouse to be replaced in the future by a "better" greenhouse. He stated that if he were to move off the property or quit the nursery business, he would either sell the greenhouse or take it with him. Custer admitted,

though, that he had no present intention of moving his business or relocating. As to the greenhouse's purpose, he testified that it assisted him by creating the necessary environment for raising plants going through a "transformation" from seed to plant to shrubbery to make them sellable.[3]

Jacob Guyer, another Bedford County nursery owner, testified that he owned six similar greenhouses that were transported from his previous place of business in Princeton, New Jersey, to his current residence in Bedford County where he had them reassembled.[4]

■ The trial court affirmed the Board reasoning that the greenhouse was taxable realty because it was meant to be a permanent improvement as it was to be used until it was worn out or Custer was no longer occupying the property. It also found that the greenhouse did not fall within the "machinery, tools, appliances and other equipment" exclusion to Section 201(a) of the Fourth to Eighth Class Law.[5]

and subject to taxation for all county, borough, town, township, school, (except in cities), poor and county institution district purposes, at the annual rate,

    (a) All real estate, to wit: Houses, house trailers and mobile homes permanently attached to land or connected with water, gas, electric or sewage facilities, buildings, lands, lots of ground and ground rents, trailer parks and parking lots, mills and manufactories of all kinds, all office type construction of whatever kind, that portion of a steel, lead, aluminum or like melting and continuous casting structures which enclose, provide shelter or protection from the elements for the various machinery, tools, appliances, equipment, materials or products involved in the mill, mine, manufactory or industrial process, and all other real estate not exempt by law from taxation

. . .

3.  Dawn Marie Custer, Custer's wife, gave similar testimony regarding the construction of the greenhouse and also stated that if they

decided to move, they would take it with them.

4.  Melissa Roy, Bedford County Chief Assessor, was also called to testify in the present matter; however, her testimony was only relevant to the uniformity argument raised by Custer, which was eventually dismissed by the trial court as explained in footnote number six below and, therefore, is not relevant to this appeal.

5.  Custer also raised the argument that the Board's failure to assess similar greenhouses in Bedford County constituted a violation of the Equal Protection Clause of the U.S. Constitution, U.S. Const. amend XIV, § 1, the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, § 1, and Section 201 of the Fourth to Eighth Class Law. The trial court did not consider this argument because Custer did not raise this issue in his petition for review of real estate tax assessment, and, therefore, it was deemed waived.

This appeal followed.[6]

In deciding whether the greenhouse is subject to real property taxes, we take guidance from *In re Appeal of Sheetz, Inc.*, 657 A.2d 1011 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 653, 666 A.2d 1060 (1995), where we had to determine whether a gasoline pump canopy was a fixture, and, therefore, taxable as realty, or was personalty, and not subject to realty tax. We began by setting out the broad categories in a quote from our Supreme Court in *Clayton v. Lienhard*, 312 Pa. 433, 167 A. 321 (1933):

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements and not peculiarly fitted to the property with which they are used; these always remain personalty ... Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty ... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable ...

*Sheetz*, 657 A.2d at 1012–1013.

■ Custer contends that the greenhouse is clearly personalty under both the first and/or third classifications. Regarding the first classification, Custer asserts that the greenhouse is more furniture than an improvement because its purpose was not to enhance the value, beauty or utility of Custer's property or to adapt the property for a new or further purpose. Rather, he argues that the greenhouse was equipment that was necessary, useful and desirable for the purpose of raising plants for his nursery business. "Improvement" has been defined as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Groner v. Monroe County Board of Assessment Appeals*, 569 Pa. 394, 400, 803 A.2d 1270, 1273 (2002) (quoting *Spahr–Alder Group v. Zoning Board of Adjustment of Pittsburgh*, 135 Pa.Cmwlth. 561, 581 A.2d 1002, 1004 (1990)). While the greenhouse may not have been valuable from a monetary perspective ($1,500) or enhanced the beauty of the property from an aesthetic perspective, the greenhouse enhanced the utility of Custer's property by allowing Custer to grow more plants for his nursery business, making it an improvement, not furniture.

■ Regarding the third classification, Custer contends that because the greenhouse can be removed without harm to it or the property on which it was located, and it was his intention that the greenhouse was to be removed once a new greenhouse was bought or the nursery business failed, it cannot be considered real property. The test to determine whether a chattel becomes part of the realty was set forth in *Sheetz* as follows:

**6.** Our standard of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether its decision is supported by substantial evidence. *In re Appeal of Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992).

A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land. BLACK'S LAW DICTIONARY 575 (5th ed.1979). The considerations to be made in determining whether or not a chattel becomes a fixture include (1) the manner in which it is physically attached or installed, (2) the extent to which it is essential to the permanent use of the building or other improvement, and (3) the intention of the parties who attached or installed it. *Sheetz,* 657 A.2d at 1013 (quoting *Gore v. Bethlehem Area School District,* 113 Pa. Cmwlth. 394, 537 A.2d 913, 915 (1988)).

Applying this test to the greenhouse, beginning with the first consideration, the manner of attachment, Custer asserts that because the greenhouse can be removed without any damage to it or the property, it must be personalty. However, in categorizing the canopy in *Sheetz* as realty rather than personalty, we observed that the degree of attachment necessary to evidence permanence is not high. *Sheetz,* 657 A.2d at 1014, n. 7. Further, we stated that:

> The permanence required is not equated with perpetuity. Just because they have been and can be moved does not mean the intention was not to make them permanent. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose.

*Id.* at 1014.

We went on to observe that "[m]odern construction methods and types of structures allow material that stays for years on a piece of property to be moved with little damage to the property. Acoustic ceiling panels 'affixed' by gravity and removable with no damage to the property are nonetheless taxable as real estate as are door handles and kitchen faucets when attached to a structure." *Id.* at 1013–1014. In the case of the greenhouse, each of the posts/poles are placed two feet into the ground, which possesses the requisite degree of "attachment." [7]

The third consideration in *Sheetz* is the intention of the parties who attached or installed the chattel. As with the canopies in *Sheetz,* there is nothing in the record in the present case suggesting that the greenhouse is an item that was intended to be removed as long as the property was being used as a nursery to grow and cultivate plants. The greenhouse creates the necessary environment for raising plants and will be affixed to the property until it is worn out, the nursery business fails or Custer and his wife no longer occupy the property. Under the *Sheetz* test then, the greenhouse is realty and taxable as real estate.

Even if the greenhouse is considered realty, Custer contends that it is still not taxable because it falls within the taxation exclusion within Section 201(a) of the Fourth to Eighth Class Law which states in relevant part: "Machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment shall not be considered or included as a part of the real estate in determining the value of such mill, mine, manufactory or industrial establishment." To fall within the exclusion, two requirements must be met: "(1) the property at issue must constitute machinery, tools, appliances, or other equipment; and (2) the property must be contained in a mill, mine,

---

7. The second consideration in *Sheetz* is the extent to which the chattel is essential to the permanent use of the building or other improvement. In this case, the question is whether the greenhouse is a building, so this consideration does not apply.

manufactory, or industrial establishment." *BFC Hardwoods, Inc. v. Board of Assessment and Appeals of Crawford County,* 565 Pa. 65, 72, 771 A.2d 759, 763 (2001) (*BFC Hardwoods*) (citing *Appeal of Borough of Aliquippa,* 405 Pa. 421, 432, 175 A.2d 856, 862 (1961)).

Custer contends that the operation of the greenhouse pursuant to his nursery business is an activity that is part of the horticulture "industrial establishment" because the greenhouse brings about a physical change in plants that is better than if they were exposed to the natural elements. While a variety of businesses have been construed to be "industrial establishments," [8] and within its confines from little seeds, mighty plants grow, "industrial" is not a term that has ever been applied to where plants are grown for consumption or for ornamentation. To put it simply, the greenhouse is not being used as part of an "industrial establishment," but as part of an "agricultural establishment" which does not enjoy a similar exclusion.

**8.** *See e.g., United Laundries, Inc. v. Board of Property Assessment, Appeals and Review,* 359 Pa. 195, 58 A.2d 833 (1948) (commercial laundry); *Messenger Publishing Co. v. Board of Property Assessment, Appeals and Review,* 183 Pa.Super. 407, 132 A.2d 768 (1957) (newspaper plant); *City of Pittsburgh v. WIIC–TV Corp.,* 14 Pa.Cmwlth. 18, 321 A.2d 387 (1974) (television station); *BFC Hardwoods* (drying lumber for commercial sale); *Allegheny Energy Supply Company, LLC v. Greene County Board of Assessment Appeals,* 837 A.2d 665 (Pa.Cmwlth.2003) (power plant's smokestacks, cooling towers and water intake structure constituted industrial machinery used directly in the manufacturing process and, thus, were excluded from real estate tax assessment).

**1.** Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. § 5453.201. Specifically, Section 201 of the Law provides, in pertinent part:
The following subjects and property shall as hereinafter provided be valued and assess and subject to taxation ...,

Accordingly, because the greenhouse is "real estate" and not part of an "industrial process" or establishment as those terms are used in Section 201(a) of the Fourth to Eighth Class Law, the trial court's order is affirmed.

### ORDER

AND NOW, this *2nd* day of *November,* 2006, the order of the Court of Common Pleas of Bedford County, dated December 20, 2005, is affirmed.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

In determining whether the greenhouse became so affixed to the land that it became part of the real estate and was, therefore, subject to the realty tax under Section 201 of the Fourth to Eighth Class County Assessment Law (Law) [1], this Court has outlined the relevant considerations, in pertinent part, as follows:

(a) All real estate, to wit: Houses, house trailers and mobilehomes permanently attached to land or connected with water, gas, electric or sewage facilities, buildings, lands, lots of ground and ground rents, trailer parks and parking lots, mills and manufactories of all kinds, all office type construction of whatever kind, that portion of a steel, lead, aluminum or like melting and continuous casting structures which enclose, provide shelter or protection from the elements for the various machinery, tools, appliances, equipment, materials or products involved in the mill, mine, manufactory or industrial process, *and all other real estate not exempt by law from taxation.* Machinery, tools, *appliances and other equipment contained in any* mill, mine, manufactory or *industrial establishment shall not be considered or included as a part of the real estate in determining the value of such* mill, mine, manufactory or *industrial establishment ....*

72 P.S. § 5453.201(a) (emphasis added).

A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land. Black's Law Dictionary 575 (5th Ed.1979). The considerations to be made in determining whether or not a chattel becomes a fixture include (1) *the manner in which it is physically attached or installed* (2) *the extent to which it is essential to the permanent use of the building or other improvement, and* (3) *the intention of the parties who attached or installed it.*

In re Appeal of Sheetz, Inc., 657 A.2d 1011 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 542 Pa. 653, 666 A.2d 1060 (1995) (citations omitted and emphasis in original).

With respect to the third of these considerations, the Majority states the following, in pertinent part:

> The third consideration in *Sheetz* is the intention of the parties who attached

or installed the chattel. As with the canopies in *Sheetz,* there is nothing in the record in the present case suggesting that the greenhouse is an item that was intended to be removed as long as the property was being used as a nursery to grow and cultivate plants. The greenhouse creates the necessary environment for raising plants and will be affixed to the property until it is worn out, the nursery business fails or Custer and his wife no longer own the property. Under the *Sheetz* test then, the greenhouse is realty and taxable as real estate.

Majority Opinion at 117.

To the contrary, Mr. Custer testified that the instant greenhouse was for temporary use in the nursery business until he and his wife could construct a more permanent structure, and that he would take the greenhouse if he should move the business like any other piece of equipment. *See* N.T. 11/17/2005 [2] at 12–13, 17–18, 18–19.[3]

---

2. "N.T. 11/17/05" refers to the transcript of the hearing conducted before the trial court on November 17, 2005.

3. Specifically, Mr. Custer testified, in pertinent part, as follows:

> Q. Okay. How long have you lived on the property, sir?
> A. Three years since, in July it will be three years.
> Q. Okay. If you were to move off the property would you take it with you?
> A. Most definitely.
>
> * * *
>
> Q. Okay. Did you intend for the greenhouse to be permanent?
> A. No. We kind of looked at this greenhouse as a starter greenhouse. And, you know, something that we could start to grow. It takes a long time to get any stock in this type of business when you're growing it yourself. And we always thought eventually we would have, you know, something, something different. But it's a—at the time it was the cheapest route for us to

> go. And that's why it was used and we went this way.
>
> * * *
>
> Q. You testified that you characterized this greenhouse as a "starter greenhouse";—
> A. Yes.
> Q. —correct?
> A. Correct.
> Q. Can I infer from that that it's your intention to use this particular greenhouse until it's supersede by a better greenhouse?
> A. Correct.
>
> * * *
>
> THE COURT: Mr.,—I want to ask you, Mr. Custer, you indicated initially that if you moved you'd take the greenhouse with you.
> THE WITNESS: Yes.
> THE COURT: And you indicated you would sell it; do you—
> THE WITNESS: If I moved, I imagine that I would start, um, doing the same nursery business somewhere else.
> THE COURT: Okay.

Mr. Custer's testimony in this regard is supported by the testimony of his wife. *See Id.* at 31.[4]

There is simply no objective evidence in the record suggesting that the greenhouse was intended to be permanently affixed to the property so as to become part of the realty. Thus, even if it is assumed that the greenhouse in this case was sufficiently physically attached to the land, requiring an examination of the Custers' intent with respect to the greenhouse, the evidence in this case does not support the determination that the greenhouse was a permanently affixed to the realty. *See, e.g., Clayton v. Lienhard,* 312 Pa. 433, 437, 167 A. 321, 322 (1933) ("[T]hird, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation; *in this class fall such chattels as boilers and machinery affixed for the use of the owner or tenant but readily removable.*") (citations omitted and emphasis added).

Accordingly, unlike the Majority, I would reverse the trial court's order in this case.

THE WITNESS: And I would take that as—well, as well as my other, you know, equipment that I need to do.

4. Specifically, Mrs. Custer testified, in pertinent part, as follows:
    Q. Okay. Is there a possibility you could move off the property?
    A. It is possible.
    Q. Okay. And if you did would you create another nursery business?
    A. Probably.
    Q. Okay.
    A. We would probably do that, yes.
    Q. Okay. If you'd remain on the property do you intend for the greenhouse to be there as long as you are there?
    A. Not that particular greenhouse—
    Q. Okay.
    A. —but the nursery business, yes.