# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen L. Allen and                    :
Linda L. Allen, husband and wife         :
                                        :
            v.                          : No. 680 C.D. 2017
                                        : Argued: September 12, 2018
Juniata County Board of                  :
Assessment Appeals                       :
                                        :
            v.                          :
                                        :
Juniata County and Juniata County        :
School District                          :
                                        :
Appeal of: Juniata County                :


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: October 22, 2018


Juniata County (County) appeals from an order of the Court of Common Pleas of the 41st Judicial District (Juniata County Branch) (trial court)[1] that determined a new structure on the property of Stephen L. Allen (Allen) and Linda L. Allen, husband and wife (collectively, Taxpayers), was not taxable under the Consolidated County Assessment Law (Assessment Law).[2] The County argues that the trial court erred by determining that Taxpayers' new structure was not

---

[1] The Honorable Keith Quigley, Senior Judge, presided over this case. Judge Quigley has since retired.

[2] 53 Pa. C.S. §§8801-8868.

taxable, denying the change in assessment value based on the improvement, and precluding the County from presenting evidence of fair market value for the entire tax parcel.  Discerning no error, we affirm.

## I. Background

Taxpayers own a 279-acre parcel of woodlands in Juniata County (Property).  Taxpayers' home is located next to the Property, but on a separate tax parcel.  In 2016, Taxpayers added a small structure to the Property, after clearing an area in preparation for placement of the structure.  The County's Assessment Office issued a change in assessment for the Property, increasing the assessed value of one acre of land from $75.00 to $1,500.00, and assessing the structure, which it described as a cabin, at a value of $1,700.00.  Reproduced Record (R.R.), Volume I,[3] at 8.

Taxpayers appealed the assessment to the County Board of Assessment Appeals (Board), which denied relief.  Taxpayers further appealed to the trial court. The issue before the court was whether the structure on the Property was taxable under Section 8811(a)(1)(iii) of the Assessment Law, which subjects to taxation "buildings permanently attached to land or connected with water, gas, electric or sewage facilities." 53 Pa. C.S. §8811(a)(1)(iii).  Taxpayers argued that the structure was merely a shed, which was not attached to the ground or connected to water, sewer, gas or electric facilities, and thus not taxable.  The County and Juniata County School District argued that the structure was a cabin serviced by a propane tank and thus met the definition of a taxable building.  The parties presented documentary evidence and the testimony of the County's Deputy Chief Assessor and Allen.

Based on the evidence presented, the trial court found that the structure was placed on a bed of limestone, was readily removable and was not connected to

_____

[3] The Reproduced Record contains two volumes.

2

municipal services such as water, gas, electric or sewer. The trial court further found that the structure lacked plumbing and was not wired for electricity. However, the trial court found that the structure was serviced by a portable heater fueled by a 20-pound capacity propane tank. Notwithstanding, the trial court determined that the use of a portable propane tank did not constitute a gas connection. The trial court reasoned that the non-permanent nature of the gas and its accoutrements, together with the portable heater, was akin to a portable electric generator used occasionally to run something within the shed. On this basis, the trial court concluded that the structure was not "connected with . . . gas" for purposes of Section 8811(a)(1)(iii) of the Assessment Law and was not taxable.

As a result of this ruling, the trial court did not permit the County to present evidence of the fair market value of the Property. The trial court surmised that the entire Property has surely increased in value since the last countywide reassessment, which occurred in the 1960s. However, the trial court explained that to open the door to hear valuation testimony as to the entire Property would essentially penalize Taxpayers for exercising their right to challenge the limited issue regarding the taxability of the structure. The trial court reasoned that such would create an "impermissible chill" to a taxpayer exercising the right to challenge a reassessment. Trial Court Op., 6/28/17, at 2. Thus, the trial court upheld Taxpayers' appeal, denying any change to the assessed value of Property.

## II. Issues

From this decision, the County filed the instant appeal.[4] The County

---

[4] Our review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law, or made findings unsupported by substantial

argues that the trial court erred in finding Taxpayers' structure is not taxable under Section 8811(a)(1)(iii) of the Assessment Law because the evidence clearly showed it was a "building . . . connected with . . . gas." It also claims that the trial court erred in denying the change in assessment value of the site because the woodland was cleared and improved by the addition of the new structure. Finally, the County argues that the trial court erred by not permitting the County's proffered evidence of the fair market value of Property because the trial court is statutorily required to make that determination in any appeal.

### III. Discussion
### A. Gas Connection

First, the County claims that the trial court erred in finding that Taxpayers' structure is not taxable under Section 8811(a)(1)(iii) of the Assessment Law. According to the County, the evidence shows that the structure was connected to a propane gas tank. Consequently, it maintains that the structure is a taxable addition to the real estate.

Section 8811(a) of the Assessment Law provides:

> (a) Subjects of taxation enumerated.—Except as provided in subsection (b), all subjects and property made taxable by the laws of this Commonwealth for county, city, borough, town, township and school district purposes shall, as provided in this chapter, be valued and assessed at the annual rates, including all:

> (1) Real estate, namely:

> * * *

---

evidence. *Fasnacht v. Board of Property Assessment Appeals of Schuylkill County*, 156 A.3d 365, 368 (Pa. Cmwlth. 2017).

(iii) buildings permanently attached to land or connected with water, gas, electric or sewage facilities;

. . . .

In *Pedersen v. Monroe County Board of Assessment Appeals*, 84 A.3d 402 (Pa. Cmwlth. 2014), this Court considered the taxability of storage sheds. The taxpayer owned a 1300-square-foot home and placed a storage shed on the property. *Pedersen*, 84 A.3d at 403. The shed was prefabricated with a garage-style rolling door and wooden floor. *Id.* The structure was delivered to the property on a rollback truck. The shed was placed on support beams sitting on a bed of stones. *Id.* The shed lacked windows, heat, electricity, and plumbing. *Id.* The shed matched the exterior of the home. *Id.* The shed was not physically affixed to the ground in any manner and could be moved to another location in the same way it was delivered. *Id.* The local assessment office increased the assessed value of the property based on the addition of the shed. The taxpayer challenged the assessment. The assessment board and court of common pleas denied relief. In concluding that the shed was taxable, the court of common pleas placed primary emphasis on the taxpayer's site preparation, which included installation of a rock bed, and the taxpayer's intention to use the shed for an indefinite period of time. *Id.* at 404.

On appeal to this Court, we examined the language of Section 8811(a)(1)(iii) and applied common and approved usage for the terms not defined. *Id.* at 405-06. We determined that a shed clearly constitutes a "building" for purposes of Section 8811(a)(1)(iii). *Id.* at 405. However, we concluded the shed was not "permanently attached." *Id.* at 406. We opined that the term "attached" "require[s] more than mere placement of a structure on the ground, leaving it held in place by weight alone." *Id.* at 406. "[T]he common and approved usage of the word connotes *a more affirmative or substantial connection, requiring connection*

5

*methods such as fastening or affixing* the building to the land." *Id.* (emphasis added). To conclude otherwise would render the General Assembly's express requirement for "permanent attach[ment]" meaningless. *Id.* Upon determining that the credited evidence failed to establish that the shed was attached in a manner sufficient to render it assessable under the Assessment Law, we reversed the assessment. *Id.* at 406-07.

The County relies on *Lazor v. Board of Assessment Appeals of Armstrong County*, 986 A.2d 219 (Pa. Cmwlth. 2009), which was decided under *former* Section 201(a) of The Fourth to Eighth Class County Assessment Law (Former Assessment Law),[5] which permitted the taxation of "All real estate, to wit . . . mobile homes permanently attached to land or connected with water, gas, electric or sewage facilities . . . ."[6] We opined that "whether a mobile home is *attached* to the land is governed by the physical facts, and whether a mobile home is *permanently attached* is primarily a matter of intent." 986 A.2d at 221 (emphasis added). "However, the self-serving statements of the owners are not controlling; the intention of the owners must be determined from all the circumstances." *Id.* Based on the record, we determined that the mobile home in question was permanently attached to the land by the concrete porch and roof. *Id.* The addition of exterior features such as concrete steps leading to the porch, landscaping with shrubs and bricks, and connection to cable television service all indicated the intent of the taxpayers to use the mobile home as a permanent and taxable seasonal residence, as opposed to a travel trailer. *Id.* The taxpayers' stated intent to move the mobile home

---

[5] Act of May 21, 1943, P.L. 571, *as amended*, *formerly* 72 P.S. §5453.201(a).

[6] This section was repealed and replaced by Section 8811(a)(ii) of the Assessment Law, which similarly permits taxation of "house trailers and mobile homes permanently attached to land or connected with water, gas, electric or sewage facilities." 53 Pa. C.S. §8811(a)(ii).

in the future did not negate their intent to leave the home permanently attached to the land for the relevant tax year. The Court noted that the home's attachment to utilities was only for part of the year and, thus, was not dispositive. *Id.* at 221 n.4.

Our focus in this case is the second part of Section 8811(a)(1)(iii), i.e., "buildings . . . connected with water, gas, electric or sewage facilities." The term "connected" is not defined by the Assessment Law. Applying common and approved usage to the term, "connected" means "joined or linked together." Merriam-Webster's Collegiate Dictionary 278 (9th ed. 1987); *see* Black's Law Dictionary 302 (6th ed. 1990) (defining "connected" as "joined" and "connect" as "to unite or link together, as in an electrical circuit; establish a bond or relation between"); *see also SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353, 376 (Pa. 2017) (in determining the common and approved usage or meaning of undefined statutory terms, courts may turn to standard dictionary definitions). Like the term "attached" in the same subsection, the word "connected" must "connote[] a more affirmative or substantial connection" conferring permanence. *See Pedersen*, 84 A.3d at 406.

The other critical element in the statute is that the connection must bear a relation to the building itself, i.e., "*buildings . . . connected with* water, gas, electric or sewage facilities." 53 Pa. C.S. §8811(a)(1)(iii) (emphasis added). It is only logical to require that the connection with water, gas, electric or sewage facilities be fastened or affixed to the building in such a way that the building is on par in terms of permanence with a building attached to the land. In other words, there must be some type of electrical wiring, plumbing or other fitting connecting the building to electric, water, gas or sewage facilities. To conclude otherwise would mean that the mere presence of a portable gas grill with a propane tank or a rechargeable battery

7

connected to a camping lantern would somehow qualify an otherwise nontaxable building as taxable.

Here, there is no dispute that the structure is a building that is not permanently attached to the land. R.R., Volume II, at 53-56, 60. The record evidence shows that the structure rests on a bed of stones. *Id.* at 38. The structure has no plumbing or sewage disposal system attached to it and it is not connected to a water source. *Id.* at 50-51, 56, 78-79. It also has no wiring and is not connected to an electric source. *Id.* at 50, 79. There are no heating ducts or heating fixtures affixed to the structure. *Id.* at 56-57, 79.

However, at one point, there was a portable heater in the structure that was attached to a portable, refillable propane cylinder or tank, located outside. *Id.* at 57, 74. Allen testified that he ran a "hose" connecting the heater to the propane tank. *Id.* at 40-41, 79-80, 117. The hose ran through a hole drilled into the structure. *Id.* at 74, 79-80, 117. The portable heater, propane tank and connection hose were not permanently affixed to the structure and were readily removable. *Id.* at 57-58, 76, 79, 117. Allen testified he primarily used the structure for storage. *Id.* at 38-73, 82. At one point, he attempted to heat the structure to germinate chestnut tree seeds, but since the structure is not insulated and the heater did not work well, his germination efforts failed. *Id.* at 73-75, 82. Consequently, he unhooked the hose from the propane tank and heater; removed the items from the structure; and relocated them to his residence. *Id.* at 75. Allen described the process of unhooking the propane tank the same as unhooking propane from a gas grill. *Id.* at 76. Upon review, substantial evidence supports the trial court's finding that the structure was not connected with gas for purposes of the Assessment Law. Thus, we conclude that

the trial court did not err in determining that the structure on Taxpayers' Property is a nonpermanent building not subject to taxation.

### B. Improvement

Next, the County claims that the trial court erred in denying a change to the assessed value of the Property. By clearing the woodland and adding the structure, Taxpayers improved the Property. The County asserts that a change in assessment may be made when improvements are made.

Section 8817 of the Assessment Law provides that "the assessors may change the assessed valuation on real property . . . when improvements are made to real property or existing improvements are removed from real property or are destroyed." 53 Pa. C.S. §8817. The Assessment Law does not define "improvements." However, our Supreme Court has adopted the following definition for tax reassessment purposes:

> Not every bit of work done to change a building constitutes an improvement. "Improvement" has been defined as a "*permanent addition* to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."

*Groner v. Monroe County Board of Assessment Appeals*, 803 A.2d 1270, 1273 (Pa. 2002) (quoting *Spahr-Alder Group v. Zoning Board of Adjustment of City of Pittsburgh*, 581 A.2d 1002, 1004 (Pa. Cmwlth. 1990) (emphasis added))[7]; *accord In re Delphais*, 903 A.2d 80, 83 (Pa. Cmwlth. 2006).

---

[7] Although the Supreme Court in *Groner* was construing *former* Section 602a of the Former Assessment Law, added by the Act of January 18, 1952, P.L. (1951) 2138, *as amended*, *formerly* 72 P.S. §5453.602a, which has since been repealed and replaced by Section 8817 of the

The County's argument in this regard ignores when reassessments may occur. The structure is exempt from taxation under Section 8811(a)(1)(iii) of the Assessment Law because it is not "permanently attached to land or connected with water, gas, electric or sewage facilities." Consequently, it is not a permanent addition to the real property. Thus, we conclude that the structure is not an improvement subject to reassessment under Section 8817 of the Assessment Law.

## C. Fair Market Value

Finally, the County claims that the trial court erred by not permitting the County to present evidence of the fair market value of the entire tax parcel. The Court is statutorily required to make that determination in "any appeal." Section 8854(a)(2) of the Assessment Law, 53 Pa. C.S. §8854(a)(2). Because Taxpayers initiated this assessment appeal, the taxing authorities may argue higher fair market value.

Section 8854(a)(2) of the Assessment Law provides:

(2) *In any appeal of an assessment* the court shall make the following determinations:

(i) The market value as of the date the appeal was filed before the board. In the event subsequent years have been made a part of the appeal, the court shall determine the market value for each year.

(ii) The common level ratio which was applicable in the original appeal to the board. In the event subsequent years have been made a part of the appeal, the court shall determine the applicable common level ratio for each year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.

---

Assessment Law, the Court's construction is equally applicable here because Section 8817 contains the identical improvements provision.

10

53 Pa. C.S. §8854(a)(2) (emphasis added).

The County cites *In re: Harrisburg Park Apartments, Inc.*, 489 A.2d 996 (Pa. Cmwlth. 1985), for the proposition that the Assessment Law "requires the Court to determine fair market value of the property under appeal as of the date the appeal was filed before the Board . . . ." Appellant's Brief at 13. However, *Harrisburg Park* merely holds that where both the taxpayer and the Board present fair market value evidence, the trial court determines the credibility and evidentiary weight of the testimony. *Harrisburg Park*, 489 A.2d at 997. It further requires the trial court to make an independent assessment of fair market value. *Id.* Notably, the taxpayer therein challenged the assessed value of the property itself. *Id.* at 996. The case did not involve a challenge of the taxing authority's right to reassess as presented here.

Technically, Taxpayers did appeal an assessment for purposes of Section 8854. However, they challenged the County's authority to reassess the Property on the basis that the structure was not subject to taxation under Section 8811(a)(1). Because the Property was not improved for purposes of Section 8817, the County did not have authority to reassess under Section 8854 in the first place. Thus, we conclude that the trial court did not err in excluding valuation evidence.[8]

---

MICHAEL H. WOJCIK, Judge

---

[8] To conclude otherwise and allow Taxpayers' limited challenge to serve as the impetus for the County's full reassessment of Taxpayers' 279-acre parcel seems patently unfair, particularly since the last countywide reassessment was conducted in the 1960s.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen L. Allen and            :
Linda L. Allen, husband and wife   :
                                     :
            v.               : No. 680 C.D. 2017
                                     :
Juniata County Board of         :
Assessment  Appeals            :
                                     :
            v.               :
                                     :
Juniata County and Juniata County  :
School District                :
                                     :
Appeal of: Juniata County       :

## O R D E R

AND NOW, this 22nd day of October, 2018, the order of the Court of Common Pleas of the 41st Judicial District (Juniata County Branch), dated May 12, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge