**AIR PRODUCTS & CHEMICALS, INC.**

v.

**BOARD OF ASSESSMENT APPEALS OF LEHIGH COUNTY,**
Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided Oct. 8, 1998.

Emil W. Kantra, II, Allentown, for appellant.

Joseph A. Fitzpatrick, Jr., Center Valley, for appellee.

Before COLINS, President Judge, LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

LEADBETTER, Judge.

■ The County of Lehigh (County) appeals from the order of the Court of Common Pleas of Lehigh County (trial court) granting Air Products & Chemicals, Inc.'s (Air Products) tax assessment appeal. The issues raised on appeal are whether the trial court: (1) erroneously employed a "value-in-use" analysis in determining the fair market value of the property; and (2) erred in awarding Air Products a refund for taxes overpaid rather than a credit against future taxes due. After review, we affirm in part and reverse in part.[1]

The subject property is Air Products' corporate headquarters, which is located in Lehigh County and consists of approximately five hundred acres of real estate, six administration buildings, four research and development facilities, storage and support facilities, maintenance building, field house and fitness center. In 1993, the taxing authority assessed the property (for purposes of the 1994 tax year) with a fair market value of $80,019,500. Air Products filed a petition with the Lehigh County Board of Assessment Appeals (Board) requesting review of its assessment and the County intervened in the appeal. After a hearing, the Board denied the appeal.[2] A second petition was filed with respect to Air Products' 1996 assessment (prepared for purposes of the 1997 tax year), wherein the tax authority appraised the property with a fair market value of $74,291,200. After a hearing, the Board denied the second petition as well. Air Products appealed both denials. The actions were subsequently consolidated and a hearing de novo before the trial court followed in September 1997.[3]

At the de novo hearing, the taxing authority presented its assessment record into evidence and then rested. The assessment record showed the market value of the property as a whole as follows: 1993—$80,019,500; 1994—$80,019,500; 1995—$67,192,900; and 1996—$74,291,200.[4] Thereafter, Air Products presented the testimony of several witnesses, including that of its expert, Charles Seymour, a certified real estate appraiser. Mr. Seymour appraised the property at issue for each of the years in question as follows: $56,860,000; $55,460,000; $50,700,000; and $57,400,000. Seymour testified that he appraised the property as one indivisible tract, considering the highest and best use of the property as that of an integrated headquarters facility combining offices, research and development. According to Seymour, although he utilized the three traditional approaches to value the property,[5] he relied primarily on the cost approach due to, among other factors, the lack of comparable properties on the market.[6]

---

1. Based upon the two issues raised, our review is limited to determining whether the trial court erred as a matter of law. *County of Monroe v. Bolus*, 149 Pa.Cmwlth. 458, 613 A.2d 178, 180–81 (Pa.Cmwlth.1992).

2. Air Products' petition resulted in a continuing appeal for the 1995 and 1996 tax years as well.

3. Prior to trial, the parties stipulated to the fair market value of certain portions of the property. As a result, approximately 276 acres were at issue for 1993, 1994 and 1996 and 139 acres were at issue for 1995.

4. The applicable common level ratio is 50%, therefore, the assessed value of the property for the years in question is one-half of the property's fair market value.

5. The three methods of valuation are the capitalized income approach, the comparable sales approach and the cost approach.

6. Air Products also presented the testimony of several other witnesses, including its facility manager and a civil engineer, to address the potential for and the effect of a subdivision of the subject property.

The County presented the testimony of several witnesses, including that of Deborah Skeans, a certified real estate appraiser. Ms. Skeans appraised the property at issue as two separate or independent parcels of land, considering the highest and best use of the property as that of one tract containing two administration buildings and the fitness center and the other tract containing the remainder of the campus, including the research and development facilities. According to Skeans, the property was more marketable or more likely to be absorbed by the market if subdivided into the two smaller parcels and marketed to two purchasers. Utilizing this approach, Skeans opined to the following market values with respect to the property at issue: 1993 and 1994—$67,500,000; 1995—$66,000,000; and 1996—$72,400,000.[7] In arriving at these opinions of market value, Skeans, unlike Air Products' expert, relied primarily on the comparable sales method of valuation. The County also presented the testimony of several witnesses to opine on the feasibility of utilizing the property as two separate unrelated parcels of land.

Based upon the evidence presented, the trial court accepted the opinion of Air Products' expert as to fair market value over that of the County's expert and concluded as follows: for the 1994 tax year, the property had a fair market value of $56,860,000 and an assessed value of $28,430,000; for 1995, the fair market value was $55,460,000 and the assessed value was $27,730,000; for 1996, the fair market value was $50,700,000 and the assessed value was $25,350,000; and for 1997, the fair market value was $57,400,000 and the assessed value was $28,700,000. In addition, the trial court held that Air Products was entitled to a refund of any tax overpayments it had made during the tax years in question. The instant appeal followed.

The County first argues that the trial court (as opposed to an expert) improperly employed a value-in-use analysis in determining the fair market value of the subject property. In support of this contention, the County notes, among other things, that: (1) the trial court stated during the trial that it was interested in hearing testimony regarding the impact the hypothetical subdivision would have on Air Products' operations; (2) the trial court's findings in its opinion touch upon the impact the subdivision would have on Air Products; and (3) Air Products' witnesses testified regarding the corporation's specific use of the property and the impact a subdivision would have on Air Products. The County argues that these factors demonstrate that the trial court's determination of value was based solely on Air Products' specific use of the property rather than on the highest and best use of the property as testified to by its expert. We disagree. Review of the entire record, including the trial court's opinion, Skeans' testimony and the excerpts of testimony referred to by the County,[8] reflects that the trial court applied the correct legal standards.

■ Preliminarily, we note that in a tax assessment appeal, it is not the duty of the trial court to independently value the property, but to weigh the conflicting testimony of experts and determine a value based upon the credibility of their opinions. *County of Monroe v. Bolus*, 149 Pa.Cmwlth. 458, 613 A.2d 178, 181 (Pa.Cmwlth.1992); *Pittsburgh–Des Moines Steel Co., Inc. v. McLaughlin*, 466 A.2d 1092, 1094 (Pa.Cmwlth.1983). The trial court's determination of value must be based on competent, credible and relevant evidence. *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 224, 209 A.2d 397, 403 (1965). Moreover, the trial court has discretion to determine which of the three methods of valuation is the most appropriate for the property at issue. *Pennypack Woods*

---

7. Skeans also offered an alternative opinion of market value based upon the appraisal of the property as a single tract of land: 1993 and 1994—$64,000,000; 1995—$62,000,000; and 1996—$70,000,00.

8. After a review of the record, we note at this juncture that the testimony of the Air Products witnesses regarding the feasibility of and effect of

a subdivision of the property appears to be offered solely in response to the County's theory that the highest and best use of the property included subdividing or valuing the property as two separate tracts of land. Clearly, Air Products' appraisal expert did not advocate this theory of valuation as he valued the property as one indivisible tract.

*Home Ownership Ass'n v. Board of Revision of Taxes,* 163 Pa.Cmwlth. 80, 639 A.2d 1302, 1303 (Pa.Cmwlth.), *alloc. denied,* 539 Pa. 669, 652 A.2d 839 (1994).

In *F & M Schaeffer Brewing Co. v. Lehigh County Bd. of Appeals (Schaeffer Brewery),* 530 Pa. 451, 610 A.2d 1 (1992), our Supreme Court explained the difference between fair market value, also referred to as value-in-exchange, and value-in-use, noting that the latter concept is not relevant in assessing a property for tax purposes. There, the court stated, in pertinent part, as follows:

> Real estate is required to be assessed according to the "actual value thereof." The legislature has mandated that, in determining actual value, three approaches to valuation be used, namely, 1) cost ... 2) comparable sales and 3) income approaches, and all three must be considered in conjunction with one another. The term "actual value" is defined as market value or fair market value, which in turn are defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." ...
>
> In contrast, use value or value-in-use represents the value to a specific user and, hence, does not represent fair market value.... "Use value is the value a specific property has for a specific use." ...
>
> Because value-in-use is based on the use of the property and the value of that use to the current user, it may result in a higher value than the value in the market place. Value-in-use, therefore, is *not* a reflection of fair market value and is not relevant in tax assessment cases ...

530 Pa. at 456–57, 610 A.2d at 3–4[9] (emphasis in original, citations and footnote omitted).

In other words, value-in-use refers to a value unique to the particular owner, such as the value of a business *operated on* the property rather than the value of the property itself, which would remain constant if the property were sold and the business moved elsewhere. Properly understood, the *Schaeffer Brewing* holding which prohibits value-in-use assessments for tax purposes does not, as the County suggests, abrogate the principle discussed below that fair market value is to be determined based upon the current condition of the property.

 The County's theory of valuation appears to be based upon a misunderstanding of the concepts of both highest and best use and value-in-use. As noted by this court in *County of Monroe,* the highest and most profitable use to which land is adaptable is *one factor* to consider in determining the price, "which a purchaser, willing but not obligated to buy, would pay an owner willing but not obligated to sell." 613 A.2d at 182. The appellate courts of this Commonwealth have held that reasonably foreseeable prospects for a property which exist at the time of an assessment may be considered in determining a property's fair market value, e.g.— its probable use, lease or sale. *See McKnight Shopping Center, Inc. v. Board of Property Assessment, Appeals and Review,* 417 Pa. 234, 209 A.2d 389 (1965); *Chatfield v. Board of Revision of Taxes,* 346 Pa. 159, 29 A.2d 685 (1943); *Appeal of Marple Springfield Center, Inc.,* 133 Pa.Cmwlth. 406, 576 A.2d 106 (Pa.Cmwlth.1990), *rev'd on other grounds,* 530 Pa. 122, 607 A.2d 708 (1992). However, consideration of factors based upon pure speculation, such as what the property would be worth in an altered condition are irrelevant to the issue of fair market value. *Id.*

 In other words, hypothetical ways in which the property could be used by poten-

---

**9.** In *Schaeffer Brewing,* the assessment of a manufacturing plant with brewing facilities was at issue. The Supreme Court held that the trial court erred in accepting the opinion of the taxpayer's expert because the expert did employ a value-in-use standard in determining the fair market value of the property. Specifically, the expert utilized a replacement cost approach, which not only included the cost to replace the existing facility but the machinery and equip-

ment as well, contingent upon the property's use as a brewery with an annual production capacity of 3.5 million barrels. According to the Supreme Court, a proper assessment utilizing the cost approach estimates, as closely as possible, the cost to construct the existing taxable real estate new; it does not focus on the specific production process or use of the property. 530 Pa. at 460, 610 A.2d at 5.

tial buyers should be considered in determining what a willing buyer would pay for the property. That is not to say, however, that the property should be valued as though it were already in that hypothetical condition. For instance, a large farm may have greater potential value if the land were subdivided into one acre lots for single family homes, but while that *potential* must be considered, the property may not be taxed as though it were currently subdivided and developed. Accordingly, even if the trial court had accepted the opinion of the County's expert that subdivision was the highest and best use, it would have been error to value the property as though it were, in fact, two separate parcels.

■ Here, the trial court adopted Seymour's (Air Products' expert) ultimate opinion regarding the fair market value of the property. In doing so, the trial court accepted Seymour's opinion that the property should be valued as an indivisible tract and that the cost approach was the most appropriate means of determining fair market value due to the uniqueness of the property, the nature of its improvements and the lack of appropriate comparables on the market. A review of the expert's testimony reveals that the expert properly considered the three approaches to valuation in reaching an opinion as to fair market value. Moreover, Seymour's calculation of market value under the cost approach is proper under *Schaeffer Brewing* and evidences no consideration or expression of opinion based upon the property's unique value to or use by its current owner-occupant. Thus, the trial court's determination of value is not based upon a value-in-use standard; rather, the trial court's determination is based upon relevant, competent and credible evidence. Accordingly, we will not disturb the court's determination on appeal.

■ The County also contends that the trial court erred in holding that Air Products was entitled to a refund of any taxes overpaid. According to the County, since Air Products failed to pay its taxes under protest, it is only entitled to a credit against future taxes pursuant to Section 518.1 of the Act of May 22, 1933, *as amended,* 72 P.S.

§ 5020–518.1. Section 518.1 provides in pertinent part:

(a) Any owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision ... *Provided, however, That the appeal shall not prevent the collection of the taxes complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same:* And provided further, That the appellant may pay the amount of the tax alleged to be due by reason of the assessment appealed from to the tax collector, under protest in writing, in which case when the tax is paid over to the taxing district, it shall be the duty of the tax collector to notify the taxing district of such payment under protest by delivering to it the protest in writing. Whereupon, the taxing district with the exception of cities of the second class and school districts of the first class A within such counties shall be required to segregate twenty-five per centum (25%) of the amount of the tax paid over, and shall deposit the same in a separate account in the depository in which the funds of the taxing district are deposited, and shall not be permitted to expend any portion of such segregated amount, unless it shall first petition the court ... Provided further, That upon final disposition of the appeal the amount *found to be due* the appellant as a refund, together with interest thereon, shall also be a legal set off or credit against any taxes assessed against appellant by the same taxing district and where a taxing district alleges that *it is unable to* thus credit all of such refund in one year, the court, upon application of either party, shall determine over what period of time such refund shall be made, and shall fix the amount thereof which shall be credited in any year or years. This proviso shall be construed to apply to all refunds that are now due, or may hereafter become due, as the result of appeals from assessments that have not been finally determined or adjusted at the time this act takes effect

regardless whether there has been a payment of any moneys into court or to the tax collector under written protest.

72 P.S. § 5020–518.1(a) (emphasis added). Our research has not revealed any cases supporting the County's interpretation of the statute. As drafted, however, the statute does not limit the form of a return of an overpayment of taxes to a credit. To the contrary, it clearly provides that if the taxes are reduced on appeal, then the excess "shall be returned" to the taxpayer. Accordingly, we conclude the trial court did not err in awarding the refund.

■ Finally, the County argues that the trial court erred in ordering that interest be paid on the amount of taxes overpaid beginning from the date such overpayments were made. According to the County, interest is only due from the date of the trial court's order. We agree (as does Air Products in its appellate brief). *See generally Welsh Grant Developers Co. v. Board of Revision of Taxes*, 94 Pa.Cmwlth. 159, 503 A.2d 98 (Pa. Cmwlth.1986).

The order of the trial court is affirmed except to the extent that it ordered interest to run on the amount of taxes overpaid from the date such payments were made. With respect to the payment of interest, the order of the trial court is reversed and we remand with instructions that interest should run on the refund due from December 29, 1997, the date of the trial court's order.

### *ORDER*

AND NOW, this 8th day of October, 1998, the order of the Court of Common Pleas in the above-captioned action is hereby affirmed except with respect to its award of interest from the date that Air Products & Chemicals, Inc. paid its taxes. With respect thereto, we reverse the Court's award of interest and remand with instructions for interest due on the amounts overpaid to commence from December 29, 1997, the date of the Court's order.

Jurisdiction relinquished.